Case No. 16-5151 Casey Stevens-Bratton v. Trugreen Inc. Oral argument not to exceed 15 minutes per side. Mr. Michael Wall for the appellant. Thank you. I'm reserving three minutes of my time for rebuttal. May it please the court, Michael Wall on behalf of the plaintiff and appellant Casey Stevens-Bratton with me today as co-counsel Adam Ginelli. Ms. Stevens-Bratton had a contract with Trugreen for lawn care services. She terminated that contract in the spring of 2014. Almost a year after she terminated the contract, Trugreen made calls to her cell phone violating a federal statute, the Telephone Consumer Protection Act. The violations fall into three different categories. First, that Trugreen used an auto dialer to call her cell phone. Second, that it failed to put her on its internal do not call list. And third, it called her despite the fact that she was on the national do not call registry. Pretty much every way you can violate the TCPA. Plaintiff sued under the federal statute. She did not sue under the old lawn care services contract. Nevertheless, the district court enforced an arbitration clause in the old contract and compelled her to arbitrate her federal claims. This court reviews de novo and we're asking it to reverse. The district court applied a strong presumption in favor of arbitration. That was error in this case because this contract had already expired. Once a contract containing an arbitration clause expires, the rules are very different. This court said in the South Central decision, which we've cited, the general principle is that the obligation to arbitrate grievances does not continue in effect after the agreement expires. We think that should be the starting place for this appeal, a rule against arbitration. South Central lays out the only three exceptions to that general rule, and this case does not meet any one of them. What about the language in the contract that says that a contract applies to possible future services? When you read that against the backdrop of the general rule I just described, what that means is that while the contract is in effect, True Green had a right under the contract to call her to discuss future services. So what does that mean? It could call her to talk about renewing her contract for another year. Those would be future services. It could call her to talk about adding services to her existing plan because she didn't get the whole smorgasbord. She got some services but not others. So if it called her to talk about that, those would be future services. The only problem is possible future services is not defined, so we're left to guess as to what would be encompassed by that. Well, I don't think it's a guess. Future refers to the services. It says that those calls may refer to future services. It doesn't say the permission is given to call in the future. It doesn't speak to when the calls are made. And so what we're left with is just a general principle of contract law, which this Court has already adopted and expressed in South Central. So the future service, that would only be, like, the day that the contract was signed, that that call could be made? No. Well, during the entire term while the contract was in effect, which was a year, true green had permission while the contract was in effect because the contract said so to call her and discuss current services, meaning the services she was currently getting, or possible future services, which, again, at that point in time could be renewing her contract for another year, could be adding shrub protection or whatever it was that she didn't already have. But the threshold question in this case, though, is it's not how broad was the arbitration clause. The question is, did the duty to arbitrate even survive the termination of the contract? And that is the threshold question where no presumptions in favor of arbitrability apply. They rely very heavily on those presumptions and say that any ambiguities have to be construed in favor of arbitration. But none of that applies at this threshold stage, the Litton-South Central type analysis. And, again, South Central sets out three specific tests, and one of those has to be met before arbitration is even a possibility. The first one is that a majority of the material facts and circumstances have to arise during the contract's term. Well, if you think about plaintiff's case in chief under the TCPA, that's not going to have anything to do with this long care services contract. It's going to have to do with things like did she receive calls with an auto dialer or was she on the do not call registry. Trugreen is trying to drag the contract in as an affirmative defense, saying that she gave consent to be called on her cell phone. Now, we've cited some cases saying, you know, the fact that they tried to raise an affirmative defense doesn't change the whole nature of the case so as to make it arise under the expired contract and trigger the arbitration clause. But putting that aside for a second, just to show you how totally immaterial this contract is to the Federal case, the specific language they're relying on, and this is page ID 168 in the record, it says, if I have provided Trugreen with my cell phone number, I agree that Trugreen may contact me on that number. So it says on that number. And if you flip the contract over, in the upper right-hand corner of the contract, the plaintiff hand wrote in a cell phone number. So that was the cell phone she gave permission to be contacted on. If you compare that with paragraph 18 of our complaint, it's actually a different cell phone. The calls made to the plaintiff in violation of the TCPA were made to a different cell phone. So no matter how expansively this contract could be construed, according to its terms, it could have only given consent to being called on that old cell phone, that irrelevant cell phone. So that is an important thing that I hope the Court takes away from the face of the record. So certainly this contract is not material in any sense to the Federal TCPA claims because, at the most, it means that they had consent to call a different cell phone. Now, the second South Central test is whether a right accrued or vested under the terms of the old contract. And the classic example of an accrued or vested right is a pension right. You earn it bit by bit over time, but you don't get it until a later date. Well, the permission to call her old cell phone is nothing like a pension. They didn't earn it over time. They got that permission right off the bat. But the contract also said it could be revoked at any time, and she did that. In the spring of 2014, she revoked the whole contract. Well, saying that a right can be revoked at any time is the absolute opposite of vesting language. I know this Court has had a lot of vesting cases dealing with retiree health benefits and things of that nature. And in any one of those cases, I'm sure that if the agreement said, you know, this pension benefit can be revoked at any time, that would make quick work of the vesting claim. That's just not consistent with the idea of a vested or accrued right. The third South Central test is whether, under normal rules of contract interpretation, the disputed contractual right survives the expiration of the contract. And here the disputed contractual right is the consent to call her cell phone, bearing in mind that that, of course, is the wrong cell phone, which should render the contract totally irrelevant to the whole case. There's no language in this contract like a survival clause that says, even when this contract is terminated, you still have the right to contact me on my cell phone. You know, a good example of this kind of language is the case Trugreen cited in its Notice of Supplemental Authority, Telecom Decision Makers. The contract expressly said, Party A owes commissions to Party B. The duty to pay commissions will continue even after the contract expires because Party B brought those accounts to you and you still owe money, residual money coming in as commissions. That's what this third test has in mind, language like that. And there's nothing like that in this contract. Again, it says that the permission can be revoked at any time. And, of course, it does refer to possible future services, which we've already discussed. But read against the backdrop of that general contract rule, that just meant that during the term of the contract, she could be called to discuss future services, not that calls could be made at any time in the future forever. So what we have here is really two separate and independent things if you consider the timeline. For a year, there was a lawn care services relationship between the parties. They gave her lawn care. She paid them money. And that ended in the spring of 2014. Maybe a year later, close to a year, maybe she all of a sudden starts getting these phone calls on her cell phone, more than ten. Despite all these things, she's on the do not call list, asked not to be called. That's the second part of the situation. It's totally unrelated to the lawn care relationship that they had before. Not even the two cell phone numbers are the same. So there's really no causal relationship. There's no legal relationship. Her claims in this Federal case have nothing to do with the lawn care services contract. The only connection True Green is raising is that it says it wants unilaterally to make this case about this expired contract. And because this expired contract has an arbitration clause, this case has to be arbitrated. But when you probe a little bit deeper and look at the language and look at the cell phone numbers, there's really no connection. They're two entirely different things. And for those reasons, the dispute we have in front of the court today does not arise under the expired contract. And that is the test for whether she can be compelled to arbitrate the claims. You said the company was calling a different cell phone number. Does it make any difference whether the information they were using to call her was derived from the file they had pursuant to the contract or whether they obtained that information separate and apart from the contractual relationship? Well, I think it makes a difference in this respect. They're trying to say that this contract has something to do with our Federal case because they got the consent from this contract. That's why they're saying this case needs to be arbitrated. And we're saying, no, you didn't even get the number you called that we're complaining about from this contract. In our case that we filed, nothing in our complaint, nothing about that case has to do with this contract, not even the number you called. You didn't get consent no matter how you read this contract. It only gave true green consent to call a different cell phone. And under the TCPA, it's a number-by-number thing. You don't get consent to call one number, and that applies to every other number the person may acquire throughout her life. So they didn't have consent. And that's the only connection that they have to argue between the long-care services contract with the arbitration clause and the Federal TCPA claims. So I hope that answers your question. We don't know, of course, how they got the new cell phone number because this case never proceeded to discovery or anything like that. But from the face of the record, there's just no apparent causal relationship between the two things. So we're not arguing or just disputing that arbitration clauses are enforceable. We're just saying they're not immortal. They don't rise from the dead after the contract is terminated and attach to disputes that have nothing to do with the contract. It has to be related to the contract in some sense. It has to be arising under the contract. That is the test under South Central and Litton. And because those three South Central tests are not met in this case, we're asking the Court to reverse and remand for further proceedings. Does it make any difference how much time has elapsed from the conclusion of the contract to the time that the calls are made? I mean, if the contract expired a week ago as opposed to 20 years ago, does that make a difference? I think indirectly it would probably affect that first test because if a long time has elapsed between the expiration of the contract and the facts that led to the dispute, then it's probably not going to be the case that a majority of the material facts and circumstances happened during the term of the expired contract. That's the first South Central test. Here you had about a year. And that's a pretty good time. All right. Thank you. Good afternoon, Your Honor. May it please the Court. I'm George Lewis, and I represent the Yappily True Green in this matter. Preliminarily, of course, it is strongly disputed that there's been a violation of the TCPA. The District Court did not address that issue. It's not before this Court. This argument about that they called a different cell phone number, I cannot find anywhere in their brief or in the District Court's opinion where that issue was addressed either. It may be buried in their brief, and I don't remember it, but I don't remember hearing that argument ever before. I don't think it matters, Your Honor, for reasons that I'll explain, but I just wanted to point out that those issues that counsel began with about the violations of the TCPA are still a matter of dispute in the pleadings and have never been addressed by the district judge in this matter. The contract provides that the consent to call applies to current and possible future services, possible future services, customer services and billing, and it provides that the plaintiff did not have to provide the number in order to get services. The conclusion reached by the district judge is buttressed by the arbitration provision because the arbitration provision says, Purchaser and True Green agree that any claim, dispute, controversy between them or against the other or the employee's agents or assigns of the other and any claim arising from or related to this agreement or the relationships which result from this agreement shall be resolved by binding neutral arbitration. There is a class action waiver provision in two places in the contract. It's in the arbitration paragraph, and it's in a separate class action waiver paragraph, and that paragraph says, Any claim must be brought in the party's individual capacity and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff or similar class action in the party's expressly waive any ability to maintain a class action in any forum whatsoever. Of course, what the plaintiff wants to do in this case is to maintain a class action in the district court contrary to the clear language of the arbitration provision and contrary to the class action waiver paragraph, and the second half of that paragraph, I won't take up the court's time reading it too, but it's in all caps as well and provides that the parties are waiving their rights. Let me just ask you, pursuant to your argument that the statute was not violated, does that mean that once this contract ended and the plaintiff is given notice that she didn't want to be contacted, that your client could, based upon the contracted issue, could contact her for the rest of her life and the arbitration provision would govern whether she would want that to happen or not. She's now trapped, and until the day she dies, she has to accept these calls without the protection of the statute. Would that essentially be your position here? In your hypothetical, Your Honor, has she called and revoked permission to call? Well, she's revoked permission purportedly. I don't know if she did it by calling or email or snail mail or whatever. The contract says she can do it orally or in writing. If she has never revoked that permission, then they would have the right to call, Your Honor. But under the facts here, isn't the claim that the contract had expired and that she had provoked her permission? No, Your Honor. The contract expired, but she had never revoked her permission to call. There's nothing in the record and nothing in the complaint that indicates she had ever revoked her permission to call. Well, let me put it this way. She contends she had revoked her permission. You would agree that that's her contention? I would agree that that's the argument on appeal, that by the simple expiration of the contract or her termination of the contract, that she's revoked her permission to call. I would agree with that. Your original question had to do with would she be bound for the rest of her life. All right. Well, there may be a disputed issue as to whether she revoked. But assuming that she did, does that mean that she could never escape the shackles of this contract for the rest of her life? It would mean that she would have to submit those claims to arbitration, Your Honor, as she agreed to do. Well, okay. That's basically my question. And this court has never held and has recognized at least two times since Huffman, one nine months after Huffman and again in June, that arbitration is not the denial of a remedy. This is a AAA arbitration. In this contract they pay the cost of the arbitration if the arbitration claim is under $15,000. So she has the remedy of arbitration. This is not a denial of her right to pursue claims arising from a violation. It simply goes to the forum in which she must prosecute those claims. All right. You can continue. And so I think, Your Honor, yeah, I mean there obviously might be statute of limitations under the act, and there would be contested issues about whether auto dollars were used and all of those sort of things that happen in these types of cases. But the issue here is can that happen in the district court or must it happen before an arbitration panel chosen through the processes of the American Arbitration Association? And yes, for the rest of her life she's agreed to submit those claims to arbitration and she must do so. Where would we draw the line? Would we say she has to do it within a year or two years or five years or ten years? There's no such dividing line drawn in the contract. So once she agrees to the arbitration, she's got to follow her agreement. She doesn't have to give consent to call to get services. So the answer to your question is yes, if it arises out of that relationship that these parties have formed, just in the same way arbitration agreements arise in the financial industry or the construction industry or any other business or industry, those arbitration agreements are enforced by this court and the United States Supreme Court, and the obligation to arbitrate doesn't expire by the passage of time, in our view and in the district court's view. The district court correctly applied Huffman, in our opinion, Your Honor, in deciding this case. And in Huffman, this court, following the United States Supreme Court in Lytton, made it clear that arbitration was preferred under federal law. And indeed, the district judge cited extensively this court's opinion in Huffman. And that language that's quoted comes from Section 2 of the Huffman opinion on page 4, where this court said, We first determined whether the agreement's arbitration clause had post-expiration effect. A district court's decision whether to compel arbitration under the Federal Arbitration Act is reviewed de novo. Similarly, the district court's decisions regarding arbitrability are reviewed de novo. But then the court goes on to say, Central to the resolution of this issue is the strong federal policy in favor of arbitration. In Lytton Financial Printing Division v. NLRB, the Supreme Court recognized a, quote, presumption in favor of post-expiration arbitration of matters unless negated expressly or by clear implication for matters and disputes arising out of the relation governed by the contract. And the court goes on to say, at footnote 2 under Section 2, and this is also quoted by the district court, the Supreme Court in Lytton went on to note that with respect to agreements containing broadly worded arbitration clauses, quote, there is a presumption of arbitrability in the sense that in order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. And so the district court- Was there some sort of survivability clause in Huffman? No, Your Honor. I think actually Huffman is a better case for the plaintiffs than this case because the argument in Huffman made by the parties seeking to avoid arbitration was that there was a survivability clause and that arbitration- there was a survivability clause and that the arbitration wasn't listed in the survivability clause. And they argued by implication that by omitting it from the survivability clause that expressed the party's intent that it didn't survive. But here we don't have a survivability clause and we have a consent to call which specifically refers to future services. We also have a reference on the first page of the contract that if they don't want any services they can give consent to call. And the district court applies the three prongs in Huffman on page nine of the district court's opinion and the district court discusses each of the three prongs briefly, does not in our view make any finding as to the first prong. Here's what the district judge says on page nine. The facts in the present case are similar to those in South Central and that some but not all of the facts and occurrences, telemarketing calls, arose prior to the expiration of the old agreement. And so the district court really made no decision about whether that prong, prong number one, applied or not. But then the district judge goes on to discuss the next two prongs and he concludes the agreement allowed True Green to call plaintiff about quote possible future services, therefore the right to do so accrued or vested under the agreement. So the district judge found that prong two under Huffman applied. Then the district judge discussed prong three and the district judge says and using quote normal principles of contract interpretation leads to a finding that the disputed contractual right, i.e. arbitration, survives the expiration of the termination of the services agreement. So all this court has to do to affirm the result reached by the district judge is affirm on either of those two grounds, either of those two prongs. And respectfully this court does so as does the district judge in an environment in which there is a strong presumption finding arbitrability and finding the survivability of the arbitration clause. And so it's our position that the district court was eminently correct in the way the district judge applied Huffman and if the court I suppose disagreed with both of those two findings then the appropriate thing to do would be to remand and so the district court could make a finding under prong one. But in our view that's not going to be necessary because clearly the normal principles of contract interpretation would lead any reader to conclude that the ordinary meaning of giving somebody the right to call regarding future services and the ordinary meaning of an arbitration clause that covers anything arising out of or relating to the contractual relationship or future relationships would be covered by the agreement to arbitrate. I think your adversary here says, maybe I'm overstating the argument, but is arguing among other things that the district court applied the presumption in favor of arbitration at an earlier step than it should have been applied, that the court applied it in determining whether or not the dispute arose under the expired contract. Do you want to respond to that? Well, as we said in our brief, Your Honor, it seems to me he's discussing them together and he's pointing out this strong preference for arbitrability under the FAA, the United States Supreme Court decisions in Italian colors and so forth, and in this court's decisions both before and after Huffman. We don't think it matters, though, Your Honor, to the result because whether you apply an even playing field or a preference for arbitrability or an actual legal presumption, the result is the same based upon the clear and plain language of this contract. Excuse me, Your Honor, did you have another question? Well, I guess my concern is that it seems like there's a difference between how you decide whether the disputed issue here actually arose under the contract, which eventually expired. There's a difference between that and whether that dispute ought to be arbitrated. Your Honor, actually, as I read their brief, I read their brief to be arguing that he shouldn't have applied the presumption to survivability and not to whether it's covered by the arbitration clause. I heard what he said, and I'm a little confused as to which of those steps, but I would submit that the result is still the same because under this court's decision, including the decision that this court decided back in June of this year, there is a strong favorable policy under federal law in this circuit in favor of arbitration. I have about 33 seconds left, Your Honor. I just want to hit the conscionability argument briefly, and that is that this court has validated and enforced arbitration clauses with this arising out of and related to language on other occasions. These are lawn care services, not the right to employment, not the right to a pension. The manner of the arbitration under AAA as opposed to some other biased form of arbitration is the one chosen, and they're willing to pay for the arbitration if it's under $15,000. So all of those factors mitigate against a finding of unconscionability. I'm out of time, Your Honor. Thank you for hearing me. Thank you, counsel. Thank you. I'd like to clear up a couple of factual matters. The first is that True Green has represented that the plaintiff did not revoke permission to call her old cell phone. I would direct the court to docket entry number 39-1, which is her declaration, and she says, I terminated the attached contract in or around the spring of 2014. If she terminated the contract and revoked the contract, the permission to call her came out of the contract, so that's revoking that part of the contract too. So, yes, she did revoke permission. The second point is my adversary quoted the district court's opinion, which seemed to say that some of the facts, the telemarketing calls happened during the term of the old contract. If the district court meant to say that, that's a misconception because it's clearly pled in our complaint that telemarketing calls didn't start until January of 2015, which is about a year after the contract expired. So I wanted the court to be clear on that point. The case of Huffman that True Green relies upon and the district court relied upon, Huffman did not discuss the South Central factors in any detail and go through that analysis, because in Huffman it was very clear that the dispute arose under the old contract. The plaintiffs were saying we were employed by the company and it didn't pay us appropriately for our time worked, and they had employment contracts that governed their entire employment relationship during that time period, so it was kind of a given in that case that these tests were met. And so it's not that Huffman changed the law or applied a different standard. It's just it didn't really get hung up on the issues that govern this appeal, where it's not clear at all that the dispute arose under the old contract. So we're not saying it's a choice between Huffman versus South Central. It's just that South Central really applies to this particular kind of dispute. The question about the issue of different cell phone numbers being in the record, the parties did not argue that in their briefs. In Trugreen's reply brief it made some statements that there was that Trugreen had consent to call her at the number in the complaint and that there was a causal relationship between giving consent in the contract and then the later events, and so we just thought it was important to point out to the court that from the face of the record you're talking about two different cell phones, and therefore no matter how you parse the contract language it cannot possibly give Trugreen a colorable affirmative defense in this federal TCPA case. And I think that that's fair to do in response to their reply brief. Coming down to the possible future services language, I want it to be clear to the court, we're not trying to read that out of the contract. We've given that a reading that gives it substance but at the same time is consistent with contract law. During the term of the contract she could be contacted about future services, which I gave examples of. It's a standard rule of contract law that the contracts incorporate the rules of contract interpretation that courts have come up with that are prevailing at the time, and one of those was the one I described from South Central that unless the contract says so explicitly all the promises and duties in the contract end when the contract ends, and that's basically our position in this appeal. Thank you very much. Thank you, counsel. Case will be submitted.